D/F

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 17 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JUGO GOMEZ,

                         Petitioner,

     -against-

SUSAN CONNELL, *Superintendent*,

                         Respondent.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-1996 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Petitioner pro se Jugo Petitioner ("Petitioner") brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his November 7, 2006 conviction in New York State Supreme Court, Queens County. (Pet. (Docket Entry # 1).) For the reasons set forth below, the Petition is denied.

**I.    BACKGROUND**

     On October 15, 2005, a group of men robbed Daysy Gonzalez ("Gonzalez") and Antonio Estevez ("Estevez") at gunpoint on a street in Queens, New York. (Trial Tr. (Docket Entry # 10-8) at 220.) Shortly after the robbery, Estevez called 911. (Id.) Police arrived and arrested Petitioner nearby. (Id. at 366-67, 474.) At the scene of the arrest, Estevez identified Petitioner as the gunman to Officer Richard Stremel ("Officer Stremel"). (Id. at 475.)

     Petitioner was indicted in New York State Supreme Court, Queens County for robbery in the first and second degrees, and criminal possession of stolen property. (Trial Tr. (Docket Entry # 10) at 9.) During the pre-trial phase, defense counsel stated that Petitioner was willing to plead guilty in exchange for being adjudicated as a youthful offender. (Hr'g Tr. (Docket Entry # 10-8) at 63.) The court informed defense counsel that Petitioner would not be eligible for youthful

offender status unless the People failed to prove beyond a reasonable doubt that Petitioner was the gunman. (Id. at 69.) Prior to trial, the court also held a hearing pursuant to Wade v. United States, 388 U.S. 218 (1967), to determine if the identification at the scene of the arrest was impermissibly suggestive. (Hr'g Tr. at 63.) The court held that it was not. (Id.)

At trial, Gonzalez testified that Petitioner was the man who "was holding [her] up" and "taking her stuff" that night. (Trial Tr. at 231.) During cross-examination, however, Gonzalez revealed that she had not said anything to the police at the scene of the arrest, but had identified Petitioner for the first time at the police station. (Id. at 294.) The court reopened the Wade hearing to determine if any improperly suggestive identification procedures had taken place at the precinct that might have tainted Gonzalez's in-court identification. (Id. at 306, 334.)

At the reopened hearing, Officer Stremel testified. He stated that, after making the arrest and transporting Petitioner to the station house, he brought Petitioner in through the back door and led him to the sergeant's desk at the front of the station to process the arrest. (Id. at 338.) By that time, Gonzalez and Estevez had also arrived and were seated in the public area approximately twenty feet from the sergeant's desk, behind a waist-high wall. (Id. at 338-39.) From where they were seated, Gonzalez and Estevez could see Officer Stremel and Petitioner at the sergeant's desk. (Id. at 344.) Gonzalez and Estevez stood up and pointed at Petitioner while seemingly nodding in agreement and conversing in Spanish. (Id.) Officer Stremel did not acknowledge the complainants at that point. (Id. at 346.) After finishing with the desk officer, Officer Stremel lodged Petitioner in a cell at the rear of the precinct and went to speak with the complainants. (Id.) During that conversation, Officer Stremel asked Gonzalez whether the man she had just been pointing at had robbed her and Estevez. (Id. at 317.) She indicated that it was. (Id. at 323.) At the conclusion of the reopened Wade hearing, the court found that the encounter

2

between Gonzalez and Petitioner was accidental and not the result of police misconduct, such as a prearranged show-up. (Id. at 356.) Accordingly, the court denied Petitioner's motion to suppress the identification. (Id.) Ultimately, the jury returned a guilty verdict on all counts. (Id. at 633-34.)

Petitioner appealed his conviction to the Supreme Court, Appellate Division, Second Department on two grounds: (1) that the admission of Gonzalez's precinct and in-court identifications deprived him of due process; and (2) that he should have been treated as a youthful offender. (Pet. at 6-7). The Appellate Division rejected each of Petitioner's arguments and affirmed his conviction. People v. Gomez, 60 A.D.3d 782 (2d Dep't 2009). On March 18, 2009, Petitioner sought leave to appeal the decision to the New York Court of Appeals. (Pervukhin Decl. (Docket Entry # 10-5) ¶ 2.) On May 12, 2009, the Court of Appeals denied his request. People v. Gomez, 12 N.Y.3d 854 (2009). Petitioner filed the instant petition on April 26, 2010.

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A determination of a factual issue made by a State court shall be presumed to be correct," and the "applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

3

§ 2254(e)(1).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the fact of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (internal quotation marks omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004).

A pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a pro se litigant pleads facts that would entitle him to relief, [his] petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

4

## III.   DISCUSSION

### A.   Youthful Offender Adjudication

In New York, a defendant who is between the ages of sixteen and nineteen with no prior felony conviction can be adjudicated a youthful offender. See N.Y. Crim. Proc. Law § 720.10. A youthful offender adjudication replaces a judgment of conviction. Id. § 720.20(3). A defendant convicted of certain felonies—including armed robbery—is generally ineligible for youthful offender status, unless (1) "mitigating circumstances . . . bear directly on the manner in which the crime was committed"; or (2) "the defendant was not the sole participant in the crime, and the defendant's participation was relatively minor." Id. § 720.10(3). Even if a defendant qualifies as an eligible youth, the trial court has discretion to determine whether it would serve the interests of justice to adjudicate the defendant as a youthful offender. Id. § 720.20(1)(a).

Petitioner argues that the trial court imposed an excessive sentence on him by refusing to grant his request for adjudication as a youthful offender. (Pet. at 3.) A federal court, however, may grant a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991). The Appellate Division's decision to affirm Petitioner's sentence rested on state law grounds; even construed liberally, the state court's application of the youthful offender statute does not implicate a federal or constitutional question. Therefore, this court lacks jurisdiction over this aspect of the Petition.

### B.   Identification Testimony

Petitioner further claims that the admission of Gonzalez's precinct identification and in-court identification violated Petitioner's right to due process under the Fourteenth Amendment to the United States Constitution. (Pet. at 3.)

5

Due process prohibits the admission of identification testimony that both (1) results from an "unnecessarily suggestive" procedure and (2) is unreliable when viewed in the totality of circumstances. Stovall v. Denno, 388 U.S. 293, 301-02 (1967). The Second Circuit has outlined the analysis as follows:

> The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and "[t]he reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable. In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability.

Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001) (citations omitted) (quoting Foster v. California, 394 U.S. 440, 442 n.2 (1969)). Thus, a suggestive procedure does not necessarily violate due process if there are indicia of reliability. See Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ."). Those indicia include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, the trial court properly conducted a hearing to determine whether the fact that Gonzalez saw Petitioner at the precinct had an impermissibly suggestive effect on her initial identification of him. (Trial Tr. at 332-56.) After hearing testimony from Officer Stremel, the court denied Petitioner's motion, determining that the viewing was "accidental, unarranged and not as the result of any misconduct on the part of the police." (Id. at 356.) In affirming the trial

6

court's determination, the Appellate Division relied on precedent from New York courts that have held that such accidental "showups" do not raise concerns about suggestibility. People v. Gomez, 60 A.D.3d 782, 783 (2d Dep't 2009).

This court cannot grant habeas relief unless the Appellate Division's decision was "clearly contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). There is no "clearly established Federal law" that controls the outcome of this case. Officer Stremel's uncontroverted testimony was that the police did not organize a show-up, but that Gonzalez spontaneously identified Petitioner. (Trial Tr. at 317, 346). As the Second Circuit has noted, "[n]o Supreme Court case has addressed . . . an accidental, unarranged viewing. Rather, every Supreme Court case addressing the suggestiveness of pretrial identifications in the due process context has involved police-conducted identification procedures." Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d 196, 203 (2d Cir. 2009), cert. denied, 131 S. Ct. 1019 (2011). The Appellate Divison did not unreasonably apply federal law when it held that Gonzalez's identification was properly admitted at trial.

## IV.   CONCLUSION

Gomez's petition for a writ of habeas corpus is DENIED.  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is directed to close this case. SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       November _17_, 2011

NICHOLAS G. GARAUFIS
United States District Judge

8